**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TODD RICKS** | § | |
| | § | |
| **V.** | § | **A-10-CA-352-LY** |
| | § | **[1:06-CR-206(1)-LY]** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Todd Ricks' Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Dkt. # 196[1]); the Government's Response (Dkt. # 202); Ricks' Reply to the Government's Response (Dkt. # 215); Ricks' Motion for Summary Judgment in Part as to Grounds 6, 7, 8, 9, 25, 41, 42, 48 (Dkt. # 209); Ricks' Motion for Discovery (Dkt. # 208); and Ricks' Motion for a Hearing (Dkt. # 223). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

**I.  Factual Background**

On September 5, 2006, Todd Ricks was charged in one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1). Ricks initially entered a plea of guilty to the indictment, but after obtaining new counsel, he filed a motion to withdraw his guilty plea, which was granted. Ricks went to trial on August 27, 2007, and a mistrial was declared two days later after the jury was unable to reach a verdict. On September 4, 2007, the Government filed

---

[1]"Dkt. #" refers to the Petitioner's criminal case file.

a superceding indictment charging Ricks with: possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) & 924(e) (Count One); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two); and maintaining a drug-involved premises, and aiding and betting same, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.  On December 3, 2007, Ricks went to trial on the superceding indictment, and two days later, the jury returned a guilty verdict on all three counts.  On March 5, 2008, the District Court sentenced Ricks to 240 months of imprisonment on counts one and three to run concurrently, and to 60 months on count two, to run consecutively to counts one and three, for a total imprisonment term of 300 months.  The Court also imposed a three-year term of supervised release,  ordered Ricks to pay a $300 special assessment fee and ordered him to forfeit a Lorcin .380 caliber pistol.

Ricks filed a direct appeal of his conviction and sentence, arguing that (1) there was insufficient evidence to show that he possessed a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1); (2) there was insufficient evidence to prove that he "maintained" a house for the purpose of manufacturing methamphetamine under 21 U.S.C. § 856; and (3) he was denied the effective assistance of counsel because his attorney failed to move for acquittal.  On January 5, 2009, the Fifth Circuit rejected these claims and affirmed Ricks judgment and conviction. *See Untied States v. Ricks*, 304 F. App'x 343 (5th Cir. 2009).  On May 26, 2009, the United States Supreme Court denied Ricks petition for certiorari. *See* 129 S.Ct. 2446 (2009).

On October 18, 2010, Ricks filed another appeal with the Fifth Circuit, this time appealing the District Court's denial of two motions.  Specifically, in one motion, Ricks argued that a hung jury in his 2007 mistrial equated to a an acquittal and that he was thus entitled to a nunc pro tunc order

of acquittal. In the other motion, Ricks sought a formal written ruling from the District Court that his motion for acquittal during the 2007 mistrial had been denied. The Fifth Circuit again rejected Ricks' arguments finding that "[t]he motions filed by Ricks in the district court were meaningless, unauthorized, and without any jurisdictional basis." *See United States v. Ricks*, 428 F. App'x 454, 455 (5th Cir. 2011). Accordingly, the Fifth Circuit denied the motions and dismissed Ricks' appeal as frivolous.

On May 24, 2010, Ricks filed the instant 66-page Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

## II. Standard of Review

There are only four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *See United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

The scope of review under § 2255 is quite narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076 (1992) (citing *United States v. Friday*, 456 U.S. 152, 165 (1982)). A defendant is presumed to stand "fairly and finally convicted" after conviction and exhaustion or waiver of his right to appeal. *Id*. As a result, review under § 2255 is ordinarily limited to questions of the Court's jurisdiction or of constitutional magnitude. *Shaid*, 937 F.2d at 232. Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct

appeal and, if condoned, would result "in a complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).

Moreover, even issues of constitutional or jurisdictional magnitude may not be raised for the first time on collateral review without a showing both "cause" for the procedural default and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Courts must apply "this rigorous standard in order to ensure that final judgments command respect and that their binding effect does not last only until 'the next in a series of endless postconviction collateral attacks.'" *Id.* (quoting *Frady*, 456 at 165-66). However, claims based on ineffective assistance of counsel may be raised for the first time in a collateral proceeding, whether or not the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

The Supreme Court has also recognized a narrow exception to the cause and prejudice standard when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 493 (1986).

### III. Analysis

A.  **Procedurally Barred Claims**

1.  **Claims addressed by the Fifth Circuit**

Several of Ricks' claims in the instant § 2255 Motion were already addressed by the Firth Circuit in his direct appeal. For example, in Claim One, Ricks argues that he should have been acquitted after a mistrial was declared in his first jury trial and requests that the Court enter a nunc pro tunc judgment of acquittal. This argument was raised and rejected by the Fifth Circuit. *See Ricks*, 428 F. App'x at 455. In addition, in Claims Seven and Eight, Ricks attacks his conviction under 18 U.S.C. § 924(c)(1) on grounds of insufficient evidence. Similarly, in Claims Nine, 41-42

and 48, Ricks attacks his conviction under 21U.S.C. § 856 on insufficiency of evidence grounds. The Fifth Circuit rejected these arguments in Ricks first appeal. See *Ricks*, 304 F. App'x at 345-6.

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118 (1986). Because all of the above-claims were already considered and rejected by the Fifth Circuit, this Court cannot entertain them in the instant § 2255 petition. Accordingly, Claims 1, 7-9, 41-42 and 48 should be dismissed.

### 2. Claims outside the scope of a § 2255 Motion

Movant has also asserted a non-constitutional claim that is not cognizable in a § 2255 Motion. In Claim 45, Ricks contends that there are clerical errors in the Presentence Investigation Report that "must be corrected." Motion to Vacate at p. 58. Such non-constitutional claims may not be asserted in a § 2255 proceeding. *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) ("Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding."). However, to the extent that Ricks raises such a claim in the context of an ineffective assistance of counsel argument, the Court will address it below.

### B. Constitutional and Jurisdictional Claims

The Government argues that Ricks procedurally defaulted the remaining claims in his § 2255 (with the exception of his ineffective assistance of counsel claims) because he did not assert them in his direct appeal. "It is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the petitioner can first demonstrate either (1) cause and prejudice, or (2) that he is 'actually innocent' of the crime for which he was convicted." *United States v. Sorrells*, 145 F.3d 744, 749 (5th Cir. 1998). Although

Ricks does not directly address why his procedural default should be excused, he does argue that his attorneys were ineffective for failing to raise "most of" the issues asserted in his § 2255 petition during his trial or on direct appeal. See Motion to Vacate at p. 46-7. A petitioner can establish cause and prejudice by showing that counsel rendered constitutionally ineffective assistance of counsel. *See United States v. Walker*, 68 F.3d 931, 934 (5th Cir.1995), *cert. denied*, 516 U.S. 1165 (1996); *United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995). "[I]f [a] procedural default is the result of ineffective assistance of counsel, the Sixth Amendment . . . requires that responsibility for the default be imputed to the [government], which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.'" *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). Accordingly, the Court must address the merits of Ricks' claims.

**Double Jeopardy Claims**

In Claims 2 and 53, Ricks argues that the mistrial in his first trial (after the jury was unable to reach a verdict) was the equivalent of an acquittal and, therefore, his second trial and sentence violated the Fifth Amendment's Double Jeopardy Clause. Ricks' claims are entirely without merit.

In *Richardson v. United States*, 468 U.S. 317, 323-24 (1984), the petitioner argued that the Double Jeopardy Clause barred his retrial on federal drug charges after the jury in his first trial convicted him on one count but was unable to reach a verdict on two others. The Court rejected this argument, holding that the "Double Jeopardy Clause by its terms applies only where there has been some event . . . which terminates the original jeopardy" and that "the failure of the jury to reach a verdict is not an event which terminates jeopardy." *Id.* at 325; see also *United States v. Miller*, 952 F.2d 866, 874 (5th Cir.) ( "Following *Richardson*, we hold that double jeopardy does not bar this

retrial, and because under *Richardson* jeopardy has not terminated, double jeopardy will not be available as a ground for challenging any subsequent conviction that may result."), *cert. denied*, 505 U.S. 1220 (1992). In support of its holding, the Court observed that despite *Oregon v. Kennedy*, 456 U.S. 667 (1982), and other cases "examin[ing] the application of double jeopardy principles to mistrials granted for reasons other than the inability of the jury to agree," it had "constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Richardson*, 468 U.S. at 324. This authority forecloses Ricks' argument that the Double Jeopardy Clause barred his second trial and subsequent sentencing.

## Second Amendment Claim

In Claim 3, Ricks argues that his convictions under 18 U.S.C. §§ 922(g)(1) and 924(c)(1) violate his Second Amendment right to "keep and bear Arms." U.S. CONST. amend. II.[2] Ricks Second Amendment claim is foreclosed by United States Supreme Court and Fifth Circuit precedent.

In support of his Second Amendment argument, Ricks relies on the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Heller*, the Supreme Court struck down a District of Columbia law that prohibited the possession of handguns and required that all firearms in the home be kept nonfunctional even when necessary for self-defense. After conducting an analysis "of both text and history," the Court recognized that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592, 595. The "central component of [this] right" is self-defense. *Id.* at 599. Because the D.C. law at issue in *Heller* "bann[ed] from the home the most preferred firearm in the nation to keep and use for

---

[2]The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

protection of one's home and family, [it] fail[ed] constitutional muster." *Id.* at 628–29 (citation and quotation marks omitted).

Despite holding that the statute before it was unconstitutional, the Court acknowledged that "the right was not unlimited, just as the First Amendment's right of free speech was not." *Id.* at 595. "Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* (emphasis in original). The Court clarified that "nothing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. *Id.* at 626-27 (emphasis added). Thus, the Court made clear that its holding concerned the *lawful* possession and use of a firearm. See also, *McDonald v. City of Chicago*, – U.S.–, 130 S.Ct. 3020, 3044 (2010) (reaffirming that the "central holding in *Heller*" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home").

Because Ricks was not lawfully possessing a firearm, *Heller* provides no relief for him. As the Fifth Circuit has stated "[i]t is clear that felons, infants, and those of unsound mind may be prohibited from possession firearms." *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002). "It is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms." *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004). "Accordingly, § 922(g)(1) represents a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms

protected under the Second Amendment." *Id*; see also, *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir.) ("*Heller* provides no basis for reconsidering *Darrington*. We therefore reaffirm *Darrington*[3] and the constitutionality of § 922(g)."), *cert. denied*, 129 S.Ct. 2814 (2009). Thus, Ricks' Second Amendment challenge to § 922(g)(1) fails.

Similarly, Ricks' challenge to § 924(c)(1) is also without merit. Section 924(c)(1)(A) imposes enhanced penalties on "any person who, during and in relation to any crime of violence or drug trafficking crime. . .uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm...." See 18 U.S.C. § 924(c)(1)(A). Every Circuit that has addressed the issue, has found that § 924(c)(1) does not violate the Second Amendment since the Second Amendment only protects the right to bear and keep arms for *lawful purposes* and the furtherance of a drug trafficking crime is clearly not a lawful purpose. See e.g., *United States v. Bryant,* 711 F.3d 364, 370 (2nd Cir. 2013) ("[W]e hold that the Second Amendment does not protect the unlawful purpose of possessing a firearm in furtherance of a drug trafficking crime..."); *United States v. Potter*, 630 F.2d 1260, 1261 (9th Cir. 2011) (same); *United States v. Thorton*, 395 F. App'x 574, 577 (11th Cir. 2010) (same); *Costigan v. Yost*, 334 F. App'x 460, 462 (3rd Cir. 2009) (same); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir.), *cert. denied*, 130 S.Ct. 147 (2009); *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008) (same), *cert. denied*, 129 S.Ct. 1652 (2009). As the Ninth Circuit explained in rejecting a petitioner's Second Amendment challenge to § 924(c)(1): "Both implicitly and explicitly, the [Supreme] Court made clear that its holding concerned the lawful possession and use of a firearm. Although the courts undoubtedly will continue to develop the full scope of the

---

[3]*See United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003), *cert. denied*, 541 U.S. 1080, (2004) ("Section 922(g)(1) does not violate the Second Amendment.").

rights conferred by the Second Amendment, it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." *Potter*, 630 F.3d at 1261. "So there is no constitutional problem with separating guns from drugs." *Jackson*, 555 F.3d at 636. Accordingly, this claim fails.

**Commerce Clause Claim**

In Claim 4, Ricks argues that his firearms convictions under 18 U.S.C. §§ 922(g)(1) and 924(c)(1) are unconstitutional and exceed Congress' power under the Commerce Clause. This claim is foreclosed by Fifth Circuit precedent.

Section 922(g)(1) provides that it is unlawful for any person convicted in any court of "a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). In *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989), *cert. denied*, 497 U.S. 1006 (1990), the Fifth Circuit held that § 922(g)(1) is a constitutional exercise of Congress' authority under the Commerce Clause. Since then, the Fifth Circuit has reaffirmed this holding on numerous occasions, including after the Supreme Court's commerce clause decision in *United States v. Lopez*, 514 U.S. 549 (1995). *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996) (holding that "neither the holding in *Lopez* nor the reasons given therefor constitutionally invalidate § 922(g)(1)"); *United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007) (holding that the Supreme Court's commerce clause decisions in *Lopez, Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Morrison*, 529 U.S. 598 (2000), "do not alter th[e] conclusion" that § 922(g)(1) is constitutional); *United States v. Daugherty*, 264 F.3d 513, 518 (2001) ("[Defendant]

urges us to reconsider the interstate commerce element of § 922(g)(1) in light of two recent, intervening decisions: [*Morrison* and *Jones*]. . .Neither *Jones* nor *Morrison* affects or undermines the constitutionality of § 922(g)."), *cert. denied*, 534 U.S. 1150 (2002). Because the constitutionality of § 922(g)(1) has been so frequently litigated before the Fifth Circuit to the same conclusion, the court has often stated that "the constitutionality of § 922(g) is not open to question." *Daugherty*, 264 F.3d at 518 (quoting *United States v. DeLeon*, 170 F.3d 494, 499 (5th Cir.), *cert. denied*, 528 U.S. 863 (1999)). Thus, Ricks' facial challenge to § 922(g)(1) is meritless.

Ricks also argues that § 922(g)(1) is unconstitutional as applied to him because it was not shown that the firearm – which was found in a drawer in his nightstand – was at that time "in or affecting commerce." Motion to Vacate at p. 14. This claim is also without merit.

The Fifth Circuit has explained that § 922(g)(1) "requires only a 'minimal nexus' between the firearm and interstate commerce." See *United States v. Gresham*, 118 F.3d 258, 264 (5th Cir. 1997) (citing *Scarborough v. United States,* 431 U.S. 563, 575 (1977)), *cert. denied*, 522 U.S. 1052 (1998). The firearm need not have a present connection to interstate commerce in order to violate § 922(g)(1). *See United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993), *cert. denied*, 510 U.S. 895 (1993) (rejecting defendant's argument that only possession of a firearm having a present connection to interstate commerce violates § 922(g)(1)). It is sufficient that the firearm traveled across state lines "at some point in the past." *United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002), *cert. denied*, 537 U.S. 910 (2002) (emphasis added); *see also Gresham*, 118 F.3d at 264 (noting that the "in or affecting commerce" element of § 922(g)(1) may be satisfied if the firearm possessed by a convicted felon "had traveled previously in interstate commerce") (emphasis added).

This is so, "even if the defendant possessed the firearm entirely intrastate." *Cavazos*, 288 F.3d at 712.

At Ricks' trial, Mark Wilson, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that Ricks' pistol had been manufactured by Lorcin Engineering, in Mira Loma, California. Vol. I of Trial Transcript ("Tr.") at p. 117, Line 11 (Dkt. # 172). Agent Wilson further testified that the pistol had been later sold in Austin, Texas on July 19, 1993. *Id*. at Line 13. Accordingly, the gun's presence in Texas had to result from its transport in interstate commerce. Evidence that a firearm was manufactured in different state or country, standing alone, is sufficient to satisfy § 922(g)'s interstate commerce requirement. *See Cavazos*, 288 F.3d at 712–13 (holding that there is a sufficient interstate commerce nexus to support a conviction under §922(g)(1) when the evidence showed that the firearm was manufactured in California and possessed in Texas); *Daugherty*, 264 F.3d at 518 (same where there was stipulated evidence that the firearm was manufactured in Egypt, imported through Tennessee, but possessed in Texas); *United States v. Kuban*, 94 F.3d 971, 973 (5th Cir. 1996), *cert. denied*, 519 U.S. 1070 (1997) (same where the firearm was manufactured in Belgium and possessed in Texas); *Rawls*, 85 F.3d at 243 (same where the firearm was manufactured in Massachusetts and possessed in Texas). Accordingly, Ricks' Commerce Clause challenge to § 922(g) is without merit.

Ricks' claim that § 924(c)(1) violates Congress' commerce clause power is also without merit. *See United States v. Randall*, 1997 WL 73715 at * 1(5th Cir. Feb. 3, 1997) (finding that petitioner's argument that § 924(c)(1) was a violation of Congress' commerce clause power and that his firearm had no nexus with interstate commerce was frivolous). See also, *Costigan v. Yost*, 334

F. App'x 460, 462 (3rd Cir. 2009) ("Section 924(c)(1)(A) is not unconstitutional as being beyond the scope of Congress's power under the Commerce Clause").

Based upon the foregoing, Ricks' argument that his convictions under 18 U.S.C. §§ 922(g)(1) and 924(c) are unconstitutional and exceed Congress' power under the Commerce Clause is entirely without merit.

**Statute of Limitations**

In Claim 5, Ricks argues that the Government was barred from prosecuting him under § 922(g)(1)because the five-year statute of limitations contained in 18 U.S.C. § 3282(a) expired on July 19, 1998. Ricks contends that because the testimony at his trial showed that the gun seized at his home had been transported from California to Texas at some point before July 19, 1993, the five year statute of limitations expired on July 19, 1998, and thus he was barred under 18 U.S.C. § 3282(a) from being prosecuted under § 922(g)(1). Ricks is mistaken.

Contrary to Ricks' argument, § 922(g)(1) criminalizes a felon's *possession* of a firearm, not the interstate transportation of a firearm in commerce. *United States v. Hill*, 200 F. App'x 783, 785 (10th Cir. 2006), *cert denied*, 549 U.S. 1244, (2007). The "in or affecting commerce" language, only "describes what kind of a gun felons may not possess" and provides the necessary jurisdictional basis for the federal law. *Id* (quoting *United States v. Gillies*, 851 F.2d 492, 495 (1st Cir.), *cert. denied*, 488 U.S. 857 (1988). The evidence the Government presented at trial established Defendant possessed the firearm on June 26, 2006, when the firearm was seized from his home. Thus, the five year statute of limitations would not have expired until June 26, 2011– four years after he was convicted by the jury in his second trial. Accordingly, Ricks' claim is without merit.

**Sufficiency of the Evidence for gun offense**

To establish a violation of 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm by a felon, the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. *United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012); see also 18 U.S.C. § 922(g)(1). Ricks only contests the sufficiency of the evidence on the possession element. Specifically, Ricks argues that the Government failed to show that his fingerprints were on the pistol or that he knew the pistol was in the night stand when it was seized. In addition, he argues that there was no evidence that he possessed the gun when it was transported from California to Texas.

Possession of a firearm may be actual or constructive, and it may be proved by circumstantial evidence. *Id.* at 419. "Actual possession" means that "the defendant knowingly has direct physical control over a thing at a given time." *Id.* (quoting *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998)). "Constructive possession" may be found if the defendant had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found. *Meza*, 701 F.3d at 419. In cases of joint occupancy, courts "will find constructive possession only when there is 'some evidence supporting at least a plausible inference that the defendant had knowledge of and access to' the illegal item." *Id.* (quoting *United States v. Hinojosa*, 349 F.3d 200, 204 (5th Cir. 2003)).

In the instant case, there was more than sufficient evidence to show that Ricks had dominion or control over the property on which the gun was found and that he had knowledge of and access to the pistol. First, the loaded pistol was found in the night stand of the room where Ricks was

residing at the time the weapon was seized. See Tr. at p. 21, Line 24. The pistol was located next to Rick's condoms, cigarettes and cologne in the night stand he was using. In addition, at the time Ricks was arrested, he admitted to police officer Brian Baxter that he had been living in the house for six to seven months and that he had used the pistol in the past to shoot snakes. See Trial Tr. at p. 61, 64. The Court finds that there was sufficient evidence to show that Ricks had constructive possession of the pistol. See *United States v. Sauls*, 495 F. App'x 504, 505 (5th Cir. 2012) (holding that there was sufficient evidence to support § 922(g)(1) conviction where defendant acknowledged that he knew about the rifle and rifle was found near defendant's important papers).

Regarding the interstate nexus component of the possession element, Mark Wilson, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that the pistol had been manufactured by Lorcin Engineering, in Mira Loma, California. Vol. I of Trial Transcript ("Tr.") at p. 117, Line 11 (Dkt. # 172). Agent Wilson further testified that the pistol had been later sold in Austin, Texas on July 19, 1993. *Id.* at Line 13. Accordingly, the gun's presence in Texas had to result from its transport in interstate commerce. As already discussed above, evidence that a firearm was manufactured in different state or country, standing alone, is sufficient to satisfy § 922(g)'s interstate commerce requirement. *See Cavazos, 288 F.3*d at 712–13 (holding that there is a sufficient interstate commerce nexus to support a conviction under § 922(g)(1) when the evidence showed that the firearm was manufactured in California and possessed in Texas). In addition, the firearm need not have a *present* connection to interstate commerce in order to violate § 922(g)(1); rather, it is sufficient that the firearm traveled across state lines "at some point in the past." *Cavazos*, 288 F.3d 706 at 712. Accordingly, there was sufficient evidence in this case to satisfy the § 922(g)(1) interstate commerce requirement. Therefore, Ricks' § 922(g)(1) claim fails.

**Lack of Jurisdiction**

In Claim 10, Ricks argues that the District Court lacked jurisdiction over his prosecution because the state court in McCulloch County had issued an indictment based on the same underlying conduct. Similarly, in Claim 12, Ricks argues that the District Court lacked jurisdiction over this case because the search warrant was issued by the State of Texas.

First, the Court notes that Rick's state charge for possession of a controlled substance was ultimately dismissed. Moreover, the United States and Texas are separate sovereigns and are permitted to independently bring separate prosecutions to vindicate their own interests. *United States v. Angleton*, 314 F.3d 767, 771–74, 776 (5th Cir. 2002), *cert. denied*, 538 U.S. 946 (2003). See, also, *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[U]nder our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause."). A federal prosecution following a state prosecution might violate the Constitution only if the "federal prosecution was a sham or tool of the state prosecution." *United States v. Cothran*, 302 F.3d 279, 285 (5th Cir. 2002) (quoting *United States v. Moore*, 958 F.2d 646, 650 (5th Cir. 1992)). In this case, there certainly is no evidence that this exception to the general rule might be applicable. Therefore, even if Ricks actually was prosecuted and punished in Texas for the same conduct – which he was not – his subsequent prosecution in federal court under a federal statute proscribing the same activity would not trigger any constitutional concerns.

Moreover, subject matter jurisdiction "is straightforward in the criminal context." *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013). Title 18 U.S.C. § 3231 grants "original jurisdiction . . . of all offenses against the laws of the United States" to the district courts. Thus, to invoke that grant of subject matter jurisdiction, "an indictment need only charge a defendant with

an offense against the United States in language similar to that used by the relevant statute." *Id.* (internal quotations or citations omitted). "That is the extent of the jurisdictional analysis: '[A] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges . . . that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes.'" *Id.* (quoting *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002)). The district court had jurisdiction over this case because Ricks was charged with violations of federal law. *See* Superceding Indictment (Dkt. # 99). Accordingly, Ricks' jurisdictional claims are without merit.

**Tenth Amendment Claim**

In Claim 11, Ricks argues that the federal government was barred by the Tenth Amendment from using state police officers and state warrants to prosecute him under federal law. The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Under the Tenth Amendment, federal officials cannot conscript or commandeer state officials to administer or enforce a federal regulatory program. *Printz v. United States*, 521 U.S. 898, 935 (1997). Thus, the purpose of the Tenth Amendment is to protect *states* from encroachment by the federal government. *See Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 144 (1939). As the Tenth Amendment protects state rights, private citizens lack standing to raise a Tenth Amendment claim. *Id.*; see also, *United States v. Texas Tech Univ.*, 171 F.3d 279, 287 (5th Cir. 1999) (rejecting the approach of assuming "hypothetical jurisdiction" used in previous Fifth Circuit opinions that addressed the merits of Tenth Amendment claims raised by private citizens), *cert. denied*, 530 U.S. 1202 (2000). Thus, Ricks lacks standing to raise this claim.

Even if Ricks could raise this claim, it would be denied on the merits. Ricks has not identified any fact or circumstance in this case where the federal government compelled or ordered state law enforcement officers to enforce federal laws. Accordingly, this claim is also meritless.

## Selective Prosecution Claim

In Claim 13, Ricks argues that he was the victim of selective prosecution because there were three other individuals present when he was arrested, but that the United States only prosecuted him. In Claim 20, Ricks argues that the United States selectively prosecuted him because of his gender.

"[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision, whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). However, the exercise of prosecutorial discretion is limited by the Equal Protection Clause. A court's consideration of an Equal Protection-based claim of selective prosecution necessarily begins with a presumption of good faith and constitutional compliance by the prosecutors. *See United States v. Armstrong*, 517 U.S. 456, 465-66 (1996). To overcome this presumption, a defendant must prove both discriminatory effect and discriminatory purpose by presenting "clear evidence." *Id.* at 465 (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). Before a criminal defendant is entitled to any discovery on a claim of selective prosecution, he must make out a prima facie case. The prima facie case of selective prosecution requires the criminal defendant to bring forward some evidence that similarly situated individuals of a different race could have been prosecuted, but were not. *Armstrong*, 517 U.S. at 465; *United States v. Webster*, 162 F.3d 308, 333-34 (5th Cir.), *cert. denied*, 528 U.S. 829 (1999). More

specifically, a defendant must first present evidence of both discriminatory effect and discriminatory intent. *Id.*

Ricks has pointed to no specific facts or evidence to rebut the presumption that the Government made its decision to prosecute in good faith and in a nondiscriminatory manner. Ricks has not shown that any other person present had the same extensive criminal history as he, which included at least seven felony convictions and five felony convictions for crimes of violence. He has not shown that anyone else possessed or used a firearm in furtherance of drug trafficking activity. Nor has he demonstrated that the government failed to arrest and prosecute anyone present at the crime scene who had both of the afore-mentioned characteristics and who maintained a drug stash house. Finally, he has not carried his burden of demonstrating that the prosecution in his case occurred "because" of his status in a protected class or his involvement in a protected activity, that is, Ricks has not provided any direct evidence of discriminatory intent. Ricks' conclusory assertions of impermissible motive are insufficient to carry his burden. See, *United States v. Jennings*, 724 F.2d 436, 446 (5th Cir.), *cert. denied*, 467 U.S. 1227 (1984) (rejecting a selective prosecution claim, in part, because the defendant "offered nothing but bare general allegations that the selectivity was motivated by racial considerations."). Accordingly, Ricks has failed to demonstrate he is entitled to relief on his selective prosecution claims.

**Vindictive Prosecution Claim**

In Claim 14, Ricks argues that he was a victim of vindictive prosecution. Ricks notes that after he withdrew his guilty plea and after his first trial ended in a mistrial, the Government subsequently indicted him on three counts. Thus, Ricks avers that "[i]t is more than obvious" that his second trial was a vindictive prosecution. Motion to Vacate at p. 30. This claim also fails.

"Absent evidence of actual retaliation, mere reindictment after a mistrial due to a hung jury is insufficient to demonstrate the realistic likelihood of prosecutorial vindictiveness." *Untied States v. Ruppel*, 666 F.2d 261, 267 (5th Cir. 1982) ("As Ruppel's claim of prosecutorial vindictiveness is based solely on a reindictment following a hung jury, it is without merit."). The doctrine of prosecutorial vindictiveness is "rooted in the proposition that one cannot be punished for exercise of a protected right." *United States v. Ruppel*, 724 F.2d 507, 508 (5th Cir. 1984). However, in Ricks' case, his first trial resulted in a mistrial not because of any action on his part, but because the jury was simply unable to reach a verdict. *See Id.* ("This case therefore presents no possibility of vindictiveness because Ruppel made no move for which the Government's decision to re-indict can be seen as exacting retribution."). "The freedom of criminal defendants to exercise their legal rights is neither infringed nor chilled by the possibility that should the jury be unable to reach a verdict the prosecutor might "'up the ante.'" *Id.* Accordingly, Ricks has failed to demonstrate that he was the victim of vindictive prosecution.

**Duplicitous Indictment Claim**

In Claim 15, Ricks argues that his Superseding Indictment was duplicitous because each of the three separate counts charged him with multiple crimes within each count. In Count 16, Ricks argues that the Jury Instructions failed to correct the duplicitous indictment. Ricks is mistaken.

"An indictment may be duplicitous if it joins in a single Count two or more distinct offenses." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991). If an indictment is duplicitous and the defendant is prejudiced as a result, a conviction obtained on the indictment may be subject to reversal. *Id.* However, the government may include more than one "act" within a single count when those acts represent a single, continuing scheme and the indictment:

(1) adequately notifies the defendant of the charges pending; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendants to be convicted by a single, non-unanimous verdict. *Id.; United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997).

When the indictment charges a conspiracy, it can allege in a single count a conspiracy to commit several crimes without being duplicitous because "'[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983) (citing *Braverman v. United States*, 317 U.S. 49, 54 (1942)). "That an indictment alleges more than one means by which conspirators "'sought to accomplish [a] scheme does not render it duplicitous.'" *United States v. Mauskar,* 557 F.3d 219, 226 (5th Cir.) (quoting *United States v. McDermot*, 1995 WL 371036, at *4 (5th Cir. 1995)), *cert. denied*, 129 S.Ct. 2756 (2009). The Superceding Indictment in this case is not duplicitous since each count only charges one offense. In addition, the conspiracy count (count two) alleges one conspiracy to commit several crimes. As noted above, such allegations are not duplicitous.

**Speedy Trial Act Claim**

In claim 17, Ricks argues that the Speedy Trial Act was violated in his case because his trial did not commence within the 70-day time limit contained in the Act.

The Speedy Trial Act "generally requires a [criminal] defendant's trial to start within 70 days of his indictment or his appearance before a judicial officer," whichever date last occurs. *United States v. McNealy*, 625 F.3d 858, 862 (5th Cir. 2010) (citing 18 U.S.C. § 3161(c)(1)). This serves two purposes: "to ensure a federal criminal defendant's sixth amendment right to a speedy trial and to reduce the danger to the public from prolonged periods of the defendant's release on bail." *United*

*States v. Gonzales*, 897 F.2d 1312, 1315 (5th Cir. 1990), *cert. denied*, 498 U.S. 1029 (1991).

However, the Act also provides for eight types of delay that will toll the speedy trial clock. See 18

U.S.C. § 3161(h). These include periods of delay resulting from the filing of pretrial motions, *id.* at

§ 3161(h)(1)(D); and from the court's consideration of a proposed plea agreement, *id.* at §

3161(h)(1)(G).

Ricks filed numerous pretrial motions including the following: Motion to Withdraw as

Attorney (# 32), Motion to Continue (Dkt. # 36), Motion to Discharge Appointed Counsel (Dkt. #

39); Motion to Withdraw Plea of Guilty (Dkt. # 41), Motion to Suppress Evidence (Dkt. # 56),

Amended Motions to Suppress Evidence (Dkt. # 59, 60), Motions in Limine (Dkt. # 75); and after

his mistrial, Motion to Appoint Counsel (Dkt. # 101), Motion to Withdraw Document (Dkt. # 104),

and Motion to Suppress Evidence (Dkt. # 108), Motion in Limine (Dkt. # 109).  As noted above,

Section 3161(h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the

motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18

U.S.C. § 3161(h)(1)(D).[4]  The above-motions clearly fall within this provision.   In addition, any

delay resulting from the District Court's consideration of Ricks' Plea Agreement is also excluded

under § 3161(h)(1)(G).

Ricks also argues that the District Court failed to make "express findings" about why "the

ends of justice" were served by a continuance in this case in violation of the Supreme Court's

---

[4]"[T]he filing of a pretrial motion falls within this provision irrespective of whether it actually causes, or is expected to cause, delay in starting a trial."  *United States v. Tinklenberg*, 131 S.Ct. 2007, 2011 (2011).

holding in *Zedner v. United States*, 547 U.S. 489, 506 (2006). In *Zedner*, the Supreme Court held that the Speedy Trial Act "requires that when a district court grants an ends-of-justice continuance, it must 'se[t] forth, in the record of the case, either orally or in writing, its reasons' for finding that the ends of justice are served and they outweigh other interests.'" *Id.* (quoting 18 U.S.C. § 3161(h)(8)(A)). The District Court never granted a continuance in this case and therefore *Zedner* provides no relief to Ricks.

## Challenge to his Transfer from State to Federal Custody

Ricks challenges his writ of habeas corpus ad prosequendum and argues that he was denied his due process right to a state extradition hearing when he was transferred from state to federal custody. In addition, he argues that his transfer from state to federal custody was illegal and violated the Interstate Agreement on Detainers Act.

Ricks has no standing to challenge the issuance of the writ of habeas corpus ad prosequendum in this case and his transfer to federal custody. "It is well established that where state authorities surrender a prisoner to the federal authorities for trial, sentence, and execution of sentence before he is to be returned to state custody, the prisoner has no standing to contest the agreement between the sovereigns as to the order of prosecution and execution of sentences; that is, he may not challenge either his original removal from state custody, or his return thereto after the completion of his federal sentence." *Bullock v. State of Mississippi*, 404 F.2d 75, 75-6 (5th Cir. 1968). "Whether a state should surrender a prisoner to the United States is a question of comity affecting the two governments. It involves no personal right of the prisoner." *McDonald v. United States*, 403 F.2d 37, 38 (5th Cir. 1968).

In addition, in *United States v. Mauro*, 436 U.S. 340, 360-61 (1978), the Supreme Court specifically held that a writ of habeas corpus ad prosequendum issued by a federal court to state authorities, directing production of state prisoner for trial on federal and criminal charges, is not a "detainer" within the meaning of the Interstate Agreement on Detainers Act and thus does not trigger application of the Agreement. Accordingly, Ricks' Claims 18, 19, 39 and 40 should be denied.

## Confrontation Clause Claim

Ricks alleges that his Sixth Amendment right to confront "himself" was violated when his confessional statement to police was admitted into evidence during his trial after he had already exercised his Fifth Amendment right to not testify.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. However, "[a]dmission of a defendant's own statement does not violate the Confrontation Clause." *Caballero v. Thaler*, 2012 WL 3050183 at *12 (W.D. Tex. July 25, 2012). See e.g., *United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) (holding that Confrontation Clause not implicated because translations were properly construed as defendant's own statements); *United States v. Brown*, 441 F.3d 1330, 1358–59 (11th Cir. 2006) (finding that admission of defendant's own statement does not violated the Confrontation Clause); *United States v. Briscoe–Bey*, 126 F. App'x 551, 553 (3d Cir. 2005) (finding no error in admitting defendant's conversation with informant); *Pierron v. Cain*, 2012 WL 1247230 at * (E.D. La. 2012) ("There is no violation of defendant's Sixth Amendment right to confront when the "witness" against the defendant is the defendant himself"). Accordingly, Ricks' Confrontation Clause claim fails.

**Ricks' Challenge to his Confessional Statement to Police**

In Claim 22, Ricks challenges the use of his pre-arrest confessional statement that he provided to law enforcement officers on the date of the execution of the search warrant at his home. Ricks suggests that he may have been incompetent to waive his *Miranda* warnings and therefore his confessional statement was not voluntary.

The "now-familiar procedural safeguards" set forth in *Miranda* "protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation." *Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002) (internal citation omitted). A valid waiver of the right to remain silent under *Miranda* has two elements: (1) the relinquishment of the right must be voluntary in the sense that it was the product of a free and deliberate choice; and (2) the waiver must be made with 'full awareness of the right being abandoned' and the consequences of doing so." *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002) (en banc) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The determination whether a waiver was knowing and voluntary must be made under the totality of the circumstances. *Id.*

Ricks challenged the voluntariness of his confession before the District Court in the form of a Motion to Suppress Evidence. *See* Defendant's Amended Motion to Suppress Evidence (Dkt. # 59). The District Court held a hearing on Defendant's Motions to Suppress and specifically found that Ricks "provided his written statement voluntarily." Order at p. 8 (Dkt. # 70). Based on these findings, the undersigned finds that Ricks' statements were made after a knowing and voluntary waiver of his Fifth Amendment rights. Accordingly, this claim is without merit.

**Criminal Intent Claim**

In Claim 25, Ricks argues that the Jury Instructions in this case did not require the Jury to find that Ricks had the criminal intent to commit the crimes beyond a reasonable doubt. Ricks is once again raising an entirely baseless claim. In the District Court's 34-page Jury Instructions, the Court repeatedly reminded the jurors that it was their duty "to determine whether the Government has proved the guilty of Todd Mitchell Ricks for the charges in the Indictment beyond a reasonable doubt." Jury Instructions at p. 4. The Court also described in detail the three counts he was charged with and the specific statutory requirements to find him guilty for each count. See Jury Instructions p. 17-32. This claim has no merit. See *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992).

**Rule 52(b) Claim**

In Claim 28, Ricks argues that the District Court violated his duty under Federal Rule of Criminal Procedure 52(b) to correct plain errors or defects in Ricks' criminal proceedings.

Rule 52(b) grants the courts of appeal the latitude to correct particularly egregious errors on appeal regardless of a defendant's trial default: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52(b). "By its terms, recourse may be had to the Rule only *on appeal* from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Untied States v. Frady*, 456 U.S. 152, 163 (1982). Thus, the Rule is inapplicable in a § 2255 proceeding. Even if it were applicable, Ricks has failed to identify any "plain error" that affected his substantial rights in his criminal proceedings. Accordingly, this claim also fails.

## Disqualification of Trial Judge Claim

In Claim 29, Ricks argues that the District Court should be disqualified under 28 U.S.C. § 47 from addressing his arguments in the instant § 2255 Motion. First, 28 U.S.C. § 47, which precludes federal *appellate* judges from hearing appeals of cases over which they presided as district court judges, is inapplicable to this situation. *Pollack v. Hobbs*, 8 F. App'x. 37, 38 (2nd Cir. 2001). Second, Ricks has set forth no facts that would warrant disqualification of the District Court under 28 U.S.C. § 455. Finally, Ricks brings this Motion under 28 U.S.C. § 2255, which specifically envisions that the "court which imposed the sentence" will review the challenge. 28 U.S.C. § 2255. Accordingly, his claim is baseless.

## Challenge to his Superceding Indictment

In Claim 30, Ricks argues that the District Court lacked jurisdiction in this case because the Superceding Indictment was not authenticated because there was no signature of the Grand Jury foreperson on the Superceding Indictment. Pursuant to long standing court practice, the grand jury foreperson's signature is redacted from the Superceding Indictment in the public record, as called for in the E–Government Act of 2002. *See* Superceding Indictment. The record of this case demonstrates that the unredacted Superceding Indictment was in fact signed by the grand jury foreperson. This claim is baseless.[5]

---

[5]Even if the Foreperson had failed to sign the Superceding Indictment it would not be fatal because the absence of a foreperson's signature is "a mere technical irregularity that is not necessarily fatal to the indictment." *Hobby v. United States*, 468 U.S. 339, 345 (1984) (citing *Frisbie v. United States*, 157 U.S. 160, 163–65 (1895)).

**Right to a Public Trial during Voir Dire**

In Claim 31, Ricks argues that the he was denied the right to a public trial in violation of his Sixth Amendment rights because there were no members of the public present in the Courtroom during his voir dire proceedings of his trial. Although Ricks contends that the Jury Section proceedings were "closed to the public," there is no record that the District Court closed the proceedings to the public, and Judge Yeakel's practice is to always open such proceedings to the public absent a motion to seal them and good cause to do so. The fact that no members of the public chose to attend Ricks' voir dire proceedings does not mean that it was closed to the public. Accordingly, this claim is without merit.

**Challenges to Search Warrant**

In Claims 32-38, Ricks attempts to challenge the validity of the Search Warrant in this case and contends that his Fourth Amendment rights were violated. The District Court has already addressed the validity of the Search Warrant in this case and denied Ricks' previous Motions to Suppress Evidence based upon these arguments. See Memorandum and Opinion and Order Denying Defendant's Motions to Suppress Evidence. (Dkt. # 70). Ricks has failed to allege a viable constitutional argument with regard to the Search Warrant in this case. Accordingly, Claims 32-38 should be denied.

**Breach of *Old Chief* Stipulation**

In Claim 43, Ricks argues that the Government improperly offered evidence of his prior felony offenses in violation of the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 174 (1997). Specifically, Ricks alleges that after he stipulated to committing his prior felonies

for the purposes of § 922(g)(1), "the Government breached the Stipulation by entering State Parole Evidence of alleged other or similar alleged felony convictions..." Motion to Vacate at p. 56.

In *Old Chief*, 519 U.S. at 174, the Supreme Court held that a district court abuses its discretion when it refuses to permit a defendant charged with violating § 922(g)(1) to stipulate to the prior conviction, and instead allows the prosecution to submit the full record of the prior judgment. The Supreme Court reasoned in *Old Chief* that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Id.* at 185. Ricks' case is distinguishable from *Old Chief* because the Government did not introduce evidence of the name or nature of Ricks' prior convictions. Rather, it introduced parole certificates (without the name, number or nature of the offenses) to show knowledge and intent as it relates to the fact that Ricks knew that he could not possess or use a firearm for any reason. *See United States v. De Leon*, 170 F.3d at 498 (admission of parole document was relevant and not prejudicial where the nature of the offense was omitted and document was highly probative). The probative value of the information was not outweighed by the possible prejudicial impact of the fact of parole, which at best only added information that Ricks' felony conviction was recent enough that he was still on parole. *See United States v. Houston*, 110 F. App'x 536, 540 (6th Cir. 2004) (finding admission of parole evidence in § 922(g)(2) trial did not violate *Old Chief*). Thus, Ricks' claim is without merit.

**<u>Alleged Errors in PSR</u>**

In Claims 44 and 45, Ricks argues that the PSR's reference to his prior felony convictions "must be removed as clerical errors." Motion to Vacate at p. 57. Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. *See United States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993). The defendant bears the burden of demonstrating that

the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it. *Id.* at 630. The court is free to disregard a defendant's unsworn assertions that the PSR is unreliable. *Id.* at 630 & nn. 21, 22; *United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992) (objections in the form of unsworn assertions do not bear sufficient indicia of reliability to be considered). Thus, rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 1845 (2013). Ricks has failed to sustain his burden to show that the information contained in the PSR is "materially untrue, inaccurate and unreliable." Accordingly, his claims must be denied.

**Double Jeopardy with regard to gun offenses**

In Claim 46, Ricks appears to argue that his convictions under 18 U.S.C. § 922(g)(1) and § 924(e) violated the Double Jeopardy Clause. "Consideration of the same felony to convict under section 922(g) and to enhance punishment under section 924(e)(1) is neither a double prosecution nor a double punishment" and thus does not violate the Double Jeopardy Clause. *United States v. Wallace*, 889 F.2d 580, 584 (5th Cir. 1989), *cert. denied*, 497 U.S. 1006 (1990). Accordingly, Ricks' claim is without merit.

**Attack on his Prior Felony Convictions**

In Claim 47, Ricks "challenges the jurisdiction of any court for any alleged prior conviction for a violent felony." Motion to Vacate at p. 58. Ricks fails to allege any facts to support his conclusory claim with regard to his prior felony convictions. In fact, as noted above, Ricks entered into a stipulation that he had been convicted for the previous felonies. Moreover, other than an allegation that a defendant was denied counsel in a prior proceeding, a district court "may not

entertain a collateral attack on a prior conviction used to enhance the sentence" unless such a collateral attack is otherwise legally recognized. *United States v. Longstreet*, 603 F.3d 273, 276–77 (5th Cir. 2010).

**Failure to Prove Conspiracy**

In Claim 49, Ricks argues that the Government failed to prove that he was involved in a conspiracy to manufacture, distribute and possess methamphetamine in violation of 21 U.S.C. § 846. Ricks contends that the Government did not prove that he "did anything" and contends that his "mere presence in a house does not support a narcotics conviction." Motion to Vacate at p. 63. Ricks is once again attempting to challenge the sufficiency of the evidence with regard to his conviction under. As already noted, the Fifth Circuit specifically rejected Ricks' sufficiency claims on his direct appeal. However, because the conspiracy argument was not addressed on appeal, the Court will now address it.

Although Ricks was not charged in a separate conspiracy count, Count Two of his Superceding Indictment alleged that Ricks knowingly possessed a firearm "in furtherance of a drug trafficking crime . . .that is, conspiracy to manufacture, distribute and possess with intent to distribute methamphetamine. . .contrary to . . .Sections 841(a)(1) and 846." To prove the conspiracy element of the offense, the Government had to prove three elements: (1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy. *United States v. Turner*, 319 F.3d 716, 721 (5th Cir.), *cert. denied*, 538 U.S. 1017 (2003). "An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011) (quotation marks and citation omitted), *cert.*

*denied*, 132 S.Ct. 1771 (2012). "[C]ircumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it." *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir.) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 191 (2011). The jury can "infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others." *Id.* (quotation marks and citation omitted). While mere presence at the scene or association with co-conspirators is insufficient, they are factors that may be considered "in finding conspiratorial activity." *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). "While it is true that a buyer-seller relationship, without more, will not prove a conspiracy . . . [o]ne becomes a member of a drug conspiracy if he knowingly participates in a plan to distribute drugs, whether by buying, selling or otherwise." *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993), *cert. denied* 510 U.S. 1129 (1994).

The evidence presented to the jury clearly supports the conclusion that Ricks knowingly participated in a plan to distribute methamphetamine. There was a plethora of evidence, including Ricks' own confessional statement, that Ricks was living in the small house with his girlfriend, Debbie Mueller. See Trial Transcript, Vol. II, p.114, 146. In addition, numerous witnesses testified that they had seen Ricks and his girlfriend, Debbie Mueller, "cooking" and selling methamphetamine on numerous occasions on the property. See *Id.* at p. 114, 132, 137, 148, 155. Ricks and his girlfriend were present at the ranch on the day he was arrested. See *Id.* at p. 16. "As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict." *United States v. Westbrook*, 119 F.3d 1176, 1190

(5th Cir. 1997), *cert. denied*, 118 U.S. 1059 (1998).  The Court finds that there was sufficient evidence to show a conspiracy in this case.  Accordingly, Ricks' claim is without merit.

### ***Brady* and *Jenks* Claims**

In Claim 50, Ricks contends that the Government failed to provide him discoverable information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jenks Act, 18 U.S.C. § 3500.

Under *Brady*, a defendant's due process rights may be violated when exculpatory or impeachment evidence, which is both favorable to the defendant and material to guilt or punishment, is concealed by the government. See *Hughes v. Johnson*, 191 F.3d 607, 629 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000).  To state a *Brady* claim, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, and (4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence.  *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997)*, cert. denied*, 522 U.S. 1120 (1998).  Ricks has failed to establish a *prima facie* claim under *Brady* since he has failed to identify any evidence that was suppressed by the Government in this case.  Allegations that are purely speculative cannot support a *Brady* claim. See *Hughes*, 191 F.3d at 629-30.  Accordingly, this claim fails.

Ricks also claims that the Government's failure to provide information to him in violation of the Jenks Act. 18 U.S.C. § 3500.  Because there is no support in the record that the Government improperly withheld evidence in this case, his claim under the Jenks Act fails also. See *United States v. Flores*, 135 F.3d 1000, 1006 at n. 21 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999).

33

**Breach of Plea Agreement**

In Claim 52, Ricks contends that the Government "offered Defendant a Plea Agreement with a promise of less than a 10-year sentence, which [was] signed on December 15, 2006 but later sought a 15-year enhancement." Thus, Ricks contends that the Government violated the plea agreement and his conviction cannot stand.

This claim is baseless, as Ricks was not convicted or sentenced pursuant to a plea agreement. While Ricks initially entered into a plea agreement, he later elected to seek the dismissal of his attorney, and to withdraw from his plea agreement—over the Government's objection—and then elected to go to trial. See Dkt. # 41. Ricks' second attorney, Matt Dow, has testified that Ricks "repeatedly refused to even consider my advice that he accept a favorable 10-year plea agreement." Dow Affidavit at p. 2. After Ricks withdrew his guilty plea, the Government filed a Superceding Indictment adding two more counts. Accordingly, the withdrawn Plea Agreement in this case is irrelevant to Ricks' sentence and conviction. This claim is meritless.

**C.     Ineffective Assistance of Counsel Claims**

In claims 23, 24, 26, 27, 51 and 54, Ricks claims he was denied the effective assistance of his trial and appellate counsel. Specifically, Ricks claims that his trial counsel should have (1) raised the issue of Ricks' competency to stand trial; (2) argued that he was not guilty due to insanity; and (3) offered the testimony of favorable witnesses. See Claims 23, 24, and 51. In addition, Ricks argues that he was denied the effective assistance of counsel because the Criminal Justice Act, 18 U.S.C. § 3006A(g)(3), created a conflict of interest with his appointed attorneys. See Claim 26. In Claim 27, Ricks asserts a general claim of ineffective assistance of counsel "on all issues and

throughout all proceedings and appeal." Motion to Vacate at p. 45. Lastly, in Claim 54, Ricks argues that he was denied the right to appeal due to his appellate counsel's ineffectiveness.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.)*, cert. denied*, 528 U.S. 947 (1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312–313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).

**Claim 23: Ricks's competency**

In this claim, Ricks contends that his attorney should have argued that Ricks was incompetent to stand trial. Ricks claims that his substance abuse and history of depression should have alerted

his attorney that he lacked the capacity to stand trial. The test for determining competency is whether, at the time of trial, the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). A competency claim requires the defendant to produce more than mere allegations of incompetency. *See United States v. Williams*, 998 F.2d 258, 267 (5th Cir. 1993) (rejecting a defendant's incompetency claim when he "supplied only the bare allegation that he has a 'history of mental problems,' and has been 'under medical and psychiatric care as well as medication.'"), *cert. denied*, 510 U.S. 1099 (1994).

Ricks relies on his methamphetamine addiction to demonstrate his incapacity. However, drug addiction alone is insufficient to question competence. *See Volanty v. Lynaugh*, 874 F.2d 243, 247 (5th Cir.) (denying habeas relief to a petitioner who claimed his heroin addiction warranted a competency hearing), *cert. denied*, 493 U.S. 955 (1989). Ricks fails to demonstrate that "his sanity was likely to be significant factor at trial, such that the denial of a mental examination amounted to a denial of due process." *Williams*, 998 F.2d at 264. Moreover, the record reflects that Ricks was ordered detained by the undersigned on November 3, 2006 (Dkt. # 16), and his trial took place in August 2007. Ricks was therefore in custody for 10 months before his trial commenced, and any methamphetamine impairment he may have been suffering from at the time of his arrest was long past. Without a factual showing that would alert the court to question Ricks' sanity, it was not required to hold a competency hearing. *Id.* Ricks has not demonstrated that he could not consult with his lawyer or rationally understand the proceedings. By only presenting evidence of a drug addiction and a history of depression, Ricks failed to make that factual showing, so his claim fails.

## Claim 24: Sanity Defense

Not only does Ricks claim his lawyer was ineffective when he failed to raise Ricks' competency to stand trial, Ricks also claims his lawyer should have raised an insanity defense. While competency to stand trial requires a defendant to have the capacity to consult with his lawyer and to understand the nature of the proceedings, an insanity defense questions whether the defendant was insane at the time he committed the offense. *United States v. Long*, 562 F.3d 325, 331 (5th Cir. 2009). To receive a jury instruction on an insanity defense, Ricks would have had to demonstrate—by clear and convincing evidence—that he committed the offense *because* he was insane at the time. *Id.* at 332. There is absolutely no evidence that Ricks committed the offense because he was insane. As just explained in the prior claim, Ricks did not provide his attorney or the judge with any facts that he was mentally incompetent—either at the time of the offense or at trial—beyond his vague assertions concerning his drug addiction and history of depression. Therefore, this claim fails.

## Claim 26: The Criminal Justice Act

In Claim 26, Ricks argues that he was denied the effective assistance of counsel because his appointed attorneys "did little or nothing to defend, primarily because of the conflict of interest and special unconditional legal malpractice protection provided by the Criminal Justice Act, 18 U.S.C. § 3006A(g)(3)." Motion to Vacate at p. 45. Ricks argues that the Court should find 18 U.S.C. § 3006A(g)(3) unconstitutional. This claim is frivolous.

Section 3006A of the Criminal Justice Act "is concerned with the broad topic of adequate representation of defendants" and "its primary focus is on providing adequate counsel for trials on substantive offenses." *Miranda v. Untied States*, 455 F.2d 402, 404 (2nd Cir. 1972). Subsection (g)

of § 3006A deals with discretionary appointments of counsel, allowing counsel and compensation under the Act in various proceedings. Specifically, § 3006A(g)(3) provides the following:

> Malpractice and negligence suits.--The Director of the Administrative Office of the United States Courts shall, to the extent the Director considers appropriate, provide representation for and hold harmless, or provide liability insurance for, any person who is an officer or employee of a Federal Public Defender Organization established under this subsection, or a Community Defender Organization established under this subsection which is receiving periodic sustaining grants, for money damages for injury, loss of liberty, loss of property, or personal injury or death arising from malpractice or negligence of any such officer or employee in furnishing representational services under this section while acting within the scope of that person's office or employment.

18 U.S.C. § 3006A(g)(3). Ricks' claim that somehow this subsection created a conflict of interest with his attorneys is entirely baseless. As noted, the Criminal Justice Act's primary focus is to provide adequate representation to defendants, which is exactly what Ricks received in this case. Thus, Ricks' claim fails.

## Claim 27: General Claim of Ineffective Assistance

Ricks claims that his three appointed attorneys provided ineffective assistance during his federal trial, his federal appeal, and his state criminal case. Ricks's sweeping, "general" claim of ineffective assistance encompasses many vague assertions, such as failing to present favorable witnesses, failure to procure expert witnesses, and failure to make timely objections.

Ricks's allegations fall into two categories: conclusory statements, and complaints that his attorneys failed to perform specific acts that would not have been effective. The general, conclusory complaints—failure to present favorable testimony, failure to timely object and file motions, failure to effectively cross-examine governmental witnesses, etc.—are general strategy decisions that require this Court's deference. With regard to Ricks' claims that his attorneys should have asserted various arguments to the District Court and on appeal such as those made in the instant § 2255,

Motion, such claims are without merit because an attorney cannot be ineffective for failing to raise frivolous claims. "Counsel cannot be deficient for failing to press a frivolous point" *Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir. 1995). Moreover, "[j]ust as counsel is not obligated to advance every available nonfrivolous argument, so counsel is not necessarily ineffective for failing to investigate every conceivable matter inquiry into which could be classified as nonfrivolous." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992), *cert. denied*, 114 S.Ct. 97 (1993). Based upon the foregoing, this claim fails.

## Claim 51: Uncalled Witnesses

In claim 51, Ricks argues that his attorney should have offered the testimony of favorable witnesses. Ricks avers that his trial attorney should have called Debbie Mueller and Michelle McAdams to the stand "who could have proved Ricks' innocence." Motion to Vacate at p. 48.

There is good reason why "[c]laims that counsel failed to call witnesses are not favored on federal habeas review." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). "[T]he presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Id.* A petitioner seeking to show ineffective assistance of counsel must therefore "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Ricks fails to meet this burden. Ricks fails to demonstrate that either Mueller or McAdams would have testified or how their testimony would have helped him. Further, Ricks appears to argue that Mueller's guilty plea exonerates him but fails to acknowledge the possibility that *both* of them were guilty. Accordingly, Ricks' claim fails.

<u>**Claim 54: Ricks was denied his right to appeal**</u>

Ricks argues that his appellate counsel's ineffective performance effectively denied him the right to appeal his conviction. Specifically, Ricks argues that his appellate counsel should have argued that Ricks was entitled to an acquittal after his first trial ended in a mistrial, or that the second trial violated the Double Jeopardy Clause.

First, the Court notes that his appellate counsel did indeed argue on appeal that Ricks should have received an acquittal after his first trial ended in a mistrial. This claim was rejected by the Fifth Circuit. Moreover, appellate counsel could not have been ineffective for failing to raise any other claims on appeal since, as already thoroughly discussed in this report. the claims raised by Ricks are without merit. Therefore, Ricks's claim that he was denied his right to appeal fails.

**D.      Motion for Discovery**

Ricks moves the Court to order the Government to provide him with "all *Jenks* and *Brady* information," "all Grand Jury Information," "[a]ll information from the related State Court Cases," "[a]ll evidence showing the chain of custody of any evidence," "[a]ny and all letters, communications . . . between the Government, the State of Texas, any Defense Attorney, and the Federal and State Courts involved," and "any other such information." Motion for Discovery at 1-2. A habeas petitioner may "invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Rector v. Johnson*, 120 F.3d at 562 (citing *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir.1996)). "A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994). Conclusory allegations are

insufficient to warrant discovery; the petitioner must set forth specific allegations of fact. *Id*. Ricks has failed to present good cause for the requested information. In addition, Ricks fails to allege a single factual dispute, which, if resolved in his favor, would entitle him to relief. Accordingly, he is not entitled to discovery in this case and is Motion for Discovery is **DENIED** (Dkt. # 208).

E.     **Motion for Hearing**

Lastly, Ricks requests that the Court hold a hearing on his § 2255 Motion. "A motion brought under 28 U.S.C. § 2255 can be denied without a hearing "only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980). A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents "independent indicia of the likely merit of [his] allegations." See *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). Because all of Ricks' claims are baseless, he is not entitled to an evidentiary hearing on his § 2255 Motion. Accordingly, the Court **HEREBY DENIES** Ricks' Motion for a Hearing (Dkt. # 223).

## IV. RECOMMENDATION

Based upon the foregoing, the Court finds that all of Todd Ricks' claims in the instant § 2255 Motion are either procedurally barred or should be denied on the merits. Accordingly, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Todd Ricks' Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 (Dkt. # 196), in its entirety. The Court further **RECOMMENDS** that the District Court **DENY** Ricks' Motion for Summary Judgment (Dkt. # 209).

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, a certificate of appealability shall not be issued.

## VI.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(c);  *Thomas v. Arn*, 474 U.S. 140 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of July, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE